UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT KACER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 09 C 3752 |
| v. | ) | |
| | ) | Senior U. S. District Court Judge |
| JOHN E. POTTER, | ) | George W. Lindberg |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Kacer filed a complaint alleging a claim of discrimination on the basis of disability against defendant John E. Potter, Postmaster General of the United States, under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. Before the court is defendant's motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

Plaintiff began working as an electronic technician for the Postal Service in 2000. During the relevant period, plaintiff worked at the J.T. Weeker International Service Center in Chicago, Illinois, where he continues to work today. Plaintiff worked "tour three," the 3:00 pm to 11:30 pm shift. Doug Rattin, the supervisor of maintenance operations, and the plant manager, Gerald Kubick, supervised plaintiff.

Plaintiff is a Type-1 diabetic and manages his blood sugar levels by injecting himself with insulin when his blood sugar level is too high, and drinking juice or eating sweets when his blood sugar level is too low. If his blood sugar levels are too high or too low, plaintiff may be unable to conduct ordinary everyday activities. The evidence shows that plaintiff is successfully managing his diabetes.

On July 1, 2008, plaintiff began work at 3:00 p.m. At approximately 3:15 p.m. maintenance supervisor Rattin asked plaintiff to install several runs of cable, a task which plaintiff believed to be the duty of a lower-level employee. Plaintiff refused to install the cable, and demanded to see his job description. Rattin produced the job description, which showed the duty. Rattin called a union steward to review plaintiff's job description, and the union steward also agreed the duty was within the job description.

Plaintiff still refused to complete the task, and Rattin summoned plant manager Kubick. After plaintiff and Rattin had discussed the matter, plaintiff agreed to perform the assigned task after he had something to eat. Plaintiff then checked his blood sugar and found it was very low. Without eating or drinking anything, plaintiff repeated the test in front of Rattin showing Rattin his blood sugar level, and Rattin advised plaintiff to eat something. Plaintiff ate, but still did not feel well. Plaintiff then completed a leave form for that day and delivered it to Rattin.

After leaving the postal facility, plaintiff sat in his vehicle and tested his blood sugar again. While it was "considerably low" plaintiff drove home. Plaintiff's symptoms subsided later that evening when his blood sugar returned to his normal range. Plaintiff made a doctor's appointment for the following week, and he requested Family Medical Leave Act (FMLA) sick leave for the remainder of the week.

Plaintiff was ultimately away from work for almost three weeks. During his time off, plaintiff reported in sick via an automated Post Office call number. Plaintiff provided a doctor's note to a Postal Service FMLA coordinator to support his request for FMLA leave, which was approved. Prior to plaintiff's return on July 23rd, however, he had not communicated directly

2

with his postal service supervisors.

Upon plaintiff's return to work, Rattin directed plaintiff to see plant manager Kubick. Plaintiff did not seek out plant manager Kubick, but the two later bumped into each other in the hallway. Plaintiff assured Kubick that he had been away from work because of his diabetes, and was not off work because of the July 1 incident. After this exchange, Kubick told plaintiff that he would take him at his word and would change plaintiff's leave record to reflect that he was not AWOL.

Though plaintiff returned to work on July 23, he was at one time marked absent without leave (AWOL) for the entire period from July 2 through July 24. Plaintiff's employment record was corrected to reflect that he had worked on July 23 and 24 after plaintiff brought this discrepancy to his supervisor Kubick's attention.

Kubick requested that plaintiff's time record be changed from AWOL to paid approved leave for the period of July 2 through July 22, and plaintiff was ultimately paid for the entire period and his sick leave balance was correspondingly reduced. On September 8, 2008, plaintiff called in to take eight hours of sick leave for the day and entered his time via an automated phone system. Plaintiff returned to work on September 9, 2008. Plaintiff later learned that he was charged four hours of sick leave on the 8th and four hours of sick leave on the 9th. Plaintiff did not lose any pay or time, as a result of this discrepancy.

Due to an oversight, plaintiff was not immediately paid for the three weeks of sick leave in July. Plaintiff apparently did not realize he had not been paid for this July period until October. Upon discovering this problem, plaintiff did not inform his supervisors. Rather plaintiff filed an

3

Equal Employment Opportunity complaint, which was resolved in favor of defendant.

Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-52 (1986). "When the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' Rule 56(c) mandates entry of summary judgment against that party because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (quoting *Celotex*, 477 U.S. at 322-23)).

This court examines precedent under both the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, and the Rehabilitation Act when considering discrimination on the basis of a disability. *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006). The ADA and Rehabilitation Act "prohibit an employer from discriminating against a qualified individual with a disability because of the disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (quoting *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999)). In this context, discrimination includes "not

making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). For plaintiff to survive defendant's motion for summary judgment on his Rehabilitation Act failure to accommodate claim, plaintiff needs to present evidence that, if believed by a trier of fact, would show that 1) he is a qualified individual with a disability; 2) defendant was aware of his disability; and 3) defendant failed to reasonably accommodate that disability. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009).

The Seventh Circuit has held that "diabetic status, *per se*, does not qualify a plaintiff as disabled" under the Rehabilitation Act. *Scheerer*, 443 F. 3d at 919. Plaintiff must provide evidence that he is substantially limited in a major life activity "such as walking, eating, sleeping, or sexual reproduction," and "conclusory allegations will not do." *Id*. This standard requires defendant "to show that during the pertinent time period he was either prevented or severely restricted from such major daily tasks . . . . This is a high standard to meet." *Id.* (citing *Toyota Motor Mfg., KY, Inc. v. Williams*, 534 U.S. 184, 195-99 (2002), *Broadon v. Abbott*, 524 U.S. 624, 637-38 (1998)). While plaintiff suffers from diabetes and must manage his condition with daily injections of insulin and the consumption of sugar, he has not provided any specific facts that establish he is substantially limited in a major life activity. Plaintiff has described several instances where he was unable to perform a major life activity because of his low blood sugar levels. These incidents, however, do not meet the standard required here. Moreover, even if plaintiff establishes that he had a disability under the Rehabilitation Act, plaintiff has not demonstrated that defendant failed to accommodate plaintiff's diabetes.

Plaintiff's claim of failure to accommodate is based on his supervisors' failure to alter the status of his FMLA leave from AWOL to sick leave. To establish a failure to reasonably accommodate plaintiff must provide not only "evidence showing [his] attempt to engage in an interactive process with [defendant], but also that [defendant] was responsible for any breakdown that occurred in that process." *Ekstrand*, 583 F.3d at 975-76. This court is required to "isolate the cause of the breakdown and then assign responsibility." *Id*. at 976 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). In *Beck*, the Seventh Circuit further explained that:

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

75 F.3d at 1135.

Plaintiff blames defendant for the breakdown in the interactive process. Plaintiff was paid for his FMLA leave after he engaged his supervisors and alerted them to the pay discrepancy. Plaintiff's claim of failure to accommodate relies primarily on defendant not changing plaintiff's FMLA leave from AWOL to approved sick leave. Defendant, however, has demonstrated that supervisor Kubick requested plaintiff's leave be changed from AWOL to sick leave. Plaintiff contends that his leave record still indicates he was AWOL during the dates at issue, but even if this was true, defendant has shown the good faith efforts of supervisor Kubick to correct the time record. Plaintiff has presented no specific facts to demonstrate that the AWOL status remains

09 C 3752

unchanged, and plaintiff admits he did not bring the AWOL designation to his supervisors' attention because he did not believe that it would do any good.

The other discrepancies in plaintiff's leave record were corrected after plaintiff brought them to the attention of his supervisors. Plaintiff contends his lack of knowledge about whether he lost any time or money as a result of the now-corrected discrepancies creates an issue of material fact. This is not the case. Nowhere in the record is there any evidence that these discrepancies could have resulted in lost time or pay. These incidents, likewise, do not give rise to a failure to accommodate under the Rehabilitation Act. Rather, the evidence demonstrates that plaintiff's leave records were corrected when he addressed the problems with his supervisors. If a breakdown in communication did occur, the evidence establishes that it was caused by plaintiff.

ORDERED: Defendant John E. Potter's motion for summary judgment [23] is granted. Judgment in favor of defendant and against plaintiff Robert Kacer shall be set forth on a separate document and entered in the civil docket. *See* Fed.R.Civ.P. 58(a), 79(a)(2)(C).

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

Dated: October 25, 2010